JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KHUSHWANT SINGH,

              Petitioner,

   v.

ERNESTO SANTACRUZ JR., et al.,

           Respondents.

Case No. 5:26-cv-01784-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Khushwant Singh ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking release from Respondents' custody at the Adelanto Detention Center in Adelanto, California. Dkt. No. 1. Concurrently, Petitioner filed an application for temporary restraining order ("TRO") and memorandum in support thereof. Dkt. Nos. 3, 4. The Court has considered the relevant pleadings, including the Petition, Respondents' response thereto, and the argument of counsel at the hearing on April 20, 2026. Dkt. Nos. 1, 12.

## I.    Background

Petitioner is a citizen and national of India who entered the United States on approximately January 30, 2023, by crossing the border at or near

San Luis, Arizona.  Dkt. No. 1, Petition ¶ 15.  After entry, he was encountered by Border Patrol and placed in removal proceedings.  *Id.*  On January 31, 2023, Petitioner was released under an Order of Release on Recognizance ("the Order of Release"), pursuant to Section 236 of the Immigration and Nationality Act ("INA").  *Id.* ¶ 16; *see* Dkt. No. 1-3 at 3.  In pertinent part, the Order of Release states: "[y]ou must not violate any local, State, or Federal laws or ordinances."  Dkt. No. 1-3 at 3.  It also states: "NOTICE: Failure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by the Department of Homeland Security."  *Id.* (emphasis in original).  The addendum to the Order of Release lists further conditions, including that Petitioner not "commit any crimes while on this Order of Release on Recognizance" and that "[a]ny violation of these conditions may result in [Petitioner] being taken into ICE custody and [] being criminally prosecuted."  *Id.* at 4.

Once released, Petitioner filed an application for asylum and withholding of removal under the Convention Against Torture.  Petitioner asserts he complied with all conditions of his release and did not engage in any conduct suggesting he was a danger to the community or a flight risk.  Dkt. No. 1 ¶ 16.

According to the declaration of Department of Homeland Security ("DHS") Deportation Officer Henry J. Cervantes, on June 12, 2025, the Los Angeles Police Department arrested Petitioner for Battery on a Spouse in violation of California Penal Code Section 243(e)(1).[1]  As of the date of the declaration (April 17, 2026), there is no disposition for the charge.  Dkt. No. 12-1, Cervantes Decl. ¶ 7.

---

[1] Officer Cervantes declares that this information is based on his personal knowledge and review of the official records of Immigration and Customs Enforcement ("ICE"), Petitioner's "A-file", and Order of Recognizance.  Dkt. No. 12-1, Cervantes Decl. ¶ 2.

On March 27, 2026, Petitioner was re-detained by DHS while attending his in-person ICE appointment.  Dkt. No. 1 ¶ 17.  According to the Government, Petitioner was detained "for violating California state law in violation of the terms of his [Order of Release]."  Dkt. No. 12-1 ¶ 8.

## II.    Discussion

The Petition seeks immediate release.  Petitioner argues he was not given a pre-deprivation hearing and is unlawfully detained without a meaningful review of his custody status.

### A.    Procedural Due Process Violation

Courts in this District have found that re-detention, without notice or a pre-deprivation hearing, of a non-citizen who had been released on conditions shortly after their entry into the United States and had complied fully with those conditions, violated procedural due process.  *See Cruz v. Lyons, et al.*, No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting temporary restraining order releasing noncitizen who had been paroled into the United States and was re-arrested at appointment with USCIS); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in).  *See also M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the three-part test established in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).  The *Matthews* test balances three factors:

3

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

### 1.    Private Interest

Petitioner has a substantial private interest in remaining out of custody.  Petitioner has resided in the United States for over three years since he was released on conditions on January 31, 2023.

While Petitioner has remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases).  Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

### 2.    Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, Petitioner argues "the risk of erroneous deprivation is high where Respondents may unilaterally re-detain a noncitizen without notice or a hearing." Dkt. No. 1 ¶ 59.  The Court agrees.  The risk of an erroneous deprivation of a petitioner's liberty interest

4

is considerable where he has not received any bond or custody redetermination.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (risk of erroneous deprivation is considerable for petitioner previously released on bond after it was determined he was not a danger to the community or a flight risk).  However, in evaluating this risk, courts that have ordered release and a pre-deprivation hearing have considered the petitioner's compliance with all release conditions.  *See e.g., Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609 at *2 (N.D. Cal. Aug. 22, 2025) (noting that petitioner who was released on her own recognizance did not violate the conditions of her release which included reporting for any hearing or interview); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) ("Petitioner has no criminal history and indicates that he has attended every check-in and court hearing since he arrived in the United States."); *De Vasquez v. Chestnut*, No. 1:25-CV-1999-JDP, 2026 WL 25539 at *4 (E.D. Cal. Jan. 5, 2026) (noting that since release, "there has been no indication that [petitioner] has become a flight risk or danger to the community").

Respondents present evidence, which Petitioner does not dispute, that he was arrested on June 12, 2025 by the Los Angeles Police Department for Battery on a Spouse in violation of California Penal Code Section 243(e)(1). Dkt. No. 12-1 ¶ 7.  Respondents contend this arrest is a changed circumstance that warranted the revocation of Petitioner's release.  Dkt. No. 12 at 2 ("Because Petitioner has violated the conditions of his release, his detention is lawful.").

While Petitioner's initial release on January 31, 2023 was premised on the Government's then-determination that he did not present a sufficient danger or flight risk requiring his detention, the June 12, 2025 arrest suggests a changed circumstance warranting re-detention.  *See* 8 C.F.R.

§ 236.1(c)(8) (providing that the Government may release a noncitizen under Section 1226 "provided that the alien [] demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding").  Petitioner's Order of Release was expressly conditioned on compliance with local, state, or federal laws and ordinances.  Dkt. No. 1-3 at 3.  The order notified Petitioner that failure to comply with conditions could result in revocation of his release and detention by DHS.  *Id.*  The risk of an erroneous deprivation of petitioner's liberty interest is thus somewhat diminished by his alleged failure to comply with the conditions of release.

### 3.   Government Interest

Petitioner argues the government's interest in dispensing with pre-deprivation process is minimal, as Petitioner has lived in the community for a long time and Respondents failed to identify changed circumstances suggesting that immediate re-detention was necessary.  Dkt. No. 1, Petition ¶ 59.  But the government has identified changed circumstances, specifically, Petitioner's arrest on June 12, 2025 for battery on a spouse in violation of California Penal Code Section 243(e)(1), which the government contends violates Petitioner's release conditions.  Based on these changed circumstances, specifically an alleged violation of release conditions, the government had a legitimate interest in dispensing with pre-deprivation process.

However, the government's interest in further detaining Petitioner without a hearing to determine whether such detention is justified is minimal.  As discussed below, Petitioner is entitled to a bond hearing.

### B.   8 U.S.C. § 1226(a) Custody Redetermination Hearing

Petitioner argues his detention falls under 8 U.S.C. § 1226(a).  *See* Petition ¶¶ 6, 13 ("Petitioner's continued detention without a bond hearing

6

violates Petitioner's Fifth Amendment Due Process rights and the [INA]."). In the remaining Counts in the Petition, Petitioner challenges his continued detention without an individualized assessment or explanation. *See* Dkt. No. 1 ¶¶ 52, 77, 79, 88. Petitioner also challenges Respondents' reliance on 8 U.S.C. § 1225(b) "to foreclose Petitioner's access to custody review." *See id.* ¶ 86.

The Government does not dispute that Petitioner is currently detained under 8 U.S.C. § 1226(a). *See* Dkt. No. 12 at 3 ("To the extent Petitioner seeks a bond hearing under § 1226(a), he should ask the Immigration Court for it."). Section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal" but who are awaiting a decision on whether they will be removed from the United States. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). It is well established that "[f]ederal regulations provide that [noncitizens] detained under [8 U.S.C.] § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

The Court finds that Petitioner is detained under Section 1226(a) and is entitled to a bond hearing at which the Immigration Judge will assess on an individualized basis whether Petitioner presents a flight risk or a danger to the community.[2] At the detention hearing, the government will bear the burden of proof by clear and convincing evidence. Placing the burden on the government is consistent with due process because, as discussed above, Petitioner has a substantial private liberty interest, which the government

---

[2] At the hearing, Petitioner argued a bond hearing under Section 1226(a) was an insufficient remedy based on the belief that the bond decision would be automatically denied or the hearing would be procedurally improper. However, that argument is unsupported by the record in this case.

7

recognized in initially releasing him, and the government subsequently concluded that he should be deprived of that liberty interest based on changed circumstances. The government bears the burden of proving the changed circumstances and how these changed circumstances establish that Petitioner presents a flight risk or a danger to the community such that he cannot be released on conditions, including conditions more stringent than those previously imposed.

### III.   Conclusion

The Petition is granted in part. Count one of the Petition is granted and the Court orders a bond hearing as set forth herein.

Counts two and three are denied for the reasons discussed above. Count four alleges that Petitioner's detention violates the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2). APA review is limited to agency actions "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "Congress intended by that provision simply to avoid duplicating previously established special statutory procedures for review of agency actions." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993). The APA does not apply to Petitioner's challenge to his detention, which he properly brings under 28 U.S.C. § 2241. Accordingly, count four is denied.

Count five is denied because, as discussed above, the Court finds that Petitioner was detained pursuant to 8 U.S.C. 1226(a), the absence of a pre-deprivation hearing did not violate due process based on the changed circumstance, which Petitioner did not contest, and Petitioner has not established an equal protection violation.

Count six is denied because there has been no suspension of habeas relief here; indeed, the Petition is granted in part.

Finally, the Court notes that General Order 26-05 and the standard scheduling order applies to this case. *See* Dkt. No. 7. The standard

8

scheduling order is intended to provide a prompt resolution to habeas petitions and reduce the contemporaneous filing of applications for a temporary restraining order. *Id.* at 5. Applications for temporary restraining orders should be reserved for cases where the petition alleges imminent, irreparable harm that cannot be addressed by the standard scheduling order or by expediting the briefing schedule. *Id.* The application for a temporary restraining order in this action, Dkt. No. 3, does not meet that standard and, in any event, is denied as moot.

## IV.   Order

For the foregoing reasons, the Petition is granted in part and the Court orders as follows:

1.   No later than seven days after the date of this Order, the Government will provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a). At the bond hearing, the Government will bear the burden of proof by clear and convincing evidence, consistent with this Order.

2.   The parties will file a Status Report regarding the bond hearing, either jointly or separately, by no later than two days after completion of the bond hearing.

IT IS SO ORDERED.

DATE: April 22, 2026

*Patricia Donahue*

_____

Patricia Donahue
United States Magistrate Judge

9